## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| PATRICK C. LYNN, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 01-3422-MLB |
| | ) | |
| RAY ROBERTS and ROGER WERHOLZ, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This case comes before the court on plaintiff's motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(3) and (6). (Doc. 127.)  Based on plaintiff's use of profanity in his motion and supporting papers, combined with the fact that he has been expressly ordered in this case to refrain from such abusive conduct, plaintiff's motion, along with other offending papers, shall be stricken.

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff is a state prisoner currently in the custody of the Kansas Department of Corrections (KDOC), and is being held in administrative segregation at the El Dorado Correctional Facility. Plaintiff claims that his First, Eighth, and Fourteenth Amendment rights are being violated by KDOC policies that prevent him from receiving newspapers and other periodicals.  (Doc. 1.)[1]  He seeks

---

[1] Although plaintiff filed an amended complaint, (Doc. 52), he subsequently requested leave to withdraw the amended complaint and reinstate his original complaint.  (Doc. 65.)  The court interpreted this motion as a request to file a second amended complaint.  (Doc. 69.)  The motion was granted, subject to limitations, including the limitation that claims contained in the original complaint that had

damages, along with declaratory and injunctive relief.

This case was originally assigned to Judge VanBebber. Following Judge VanBebber's untimely death, the case bounced around to several different district judges before ultimately be sent to the undersigned. (Docs. 104, 106, 107, 112, 114.) Shortly after taking this case, the court directed the parties to brief matters regarding its subject matter jurisdiction based on the possibility that plaintiff had prosecuted the same claims to completion within the state system. (Doc. 116.) Defendants responded, but plaintiff filed only non-responsive documents. (Docs. 121, 122, 123.) The court denied plaintiff's non-responsive motions and, despite the fact that the original deadline had already passed, gave plaintiff additional time to file a responsive brief. (Doc. 124.) When plaintiff failed to meet the new deadline, the court dismissed the case. (Doc. 125.)

Just over a month after the dismissal, plaintiff filed the instant motion claiming that prison officials had interfered with his attempts to file the required brief. (Doc. 127.) This is a serious charge. However, in reviewing plaintiff's motion and supporting papers, along with plaintiff's subsequent filings, the court is struck - indeed, stunned - by plaintiff's malicious ranting and abusive comments, directed at both the court and others, many of which are laced with profanity. (Docs. 127, 129, 130, 131, 132, 133.)

Early in the proceedings, Judge VanBebber expressly warned plaintiff

---

previously been dismissed would not be resurrected. (Docs. 20, 69.) For purposes of this order, the court will simply refer to docket entry number 1 as plaintiff's "complaint," as modified by docket entry number 69.

> that his submission of correspondence and
> pleadings containing offensive, abusive, and/or
> threatening language is improper and unjustified.
> Any further presentation of a "pleading, written
> motion, or other paper" to the court containing
> such language will be construed as <u>intentional
> harassment</u>, and may result in sanctions being
> imposed against plaintiff. <u>See</u> Fed. R. Civ. P.
> 11(b)(1) and (c).

(Doc. 20 at 4 (emphasis added).)

In direct and willful defiance of that order, plaintiff has continued to include profanity and abusive language in his motion papers.  Merely looking to the handful of filings plaintiff has made since the case was transferred to this court, there is more than ample support for the actions imposed by this order.  In his Rule 60 motion, plaintiff accused the court of "malicious[ly]" dismissing his case and "insidiously ridicul[ing]" him for a prior motion.  (Doc. 127 at 1-2.) He contemptuously addressed the court by saying, "Belot dares deems [sic] my sworn claims as 'bizarre.'" <u>Id.</u> at 3.  Additionally, he used stars, asterisks, and other symbols to indicate the use of profanity. <u>Id.</u>  Finally, he insulted the court and other judges when he asked, "[Y]ou ever heard a shot fired in anger/spilled your blood for your country and its values, or are you another politically connected coward awarded a [j]udgeship?" <u>Id.</u>

In his attachments to his Rule 60 motion, plaintiff continues his abusive conduct.  In what purports to be a copy of his response to the court's initial order for briefing of the jurisdictional issues, plaintiff completes his first full paragraph of the brief by accusing

the court of bias.  <u>Id.</u> exh. 1 at 2.[2]   Later in that document, plaintiff declares, "By god, my claims are the truth and if <u>you</u> [the court] got [sic] any decency you'll fully/fairly examine and demand accountability."  <u>Id.</u> exh. 1 at 5 (emphasis in original).

Additional violations occurred toward the end of plaintiff's attachments to his Rule 60 motion, where he included a copy of the court's order of dismissal.  <u>Id.</u> exh. 1 at 15-17.   On that order, he circled statements and findings made by the court, and responded in the margins with profane critiques.   For example, the court said "[p]laintiff never responded" to the order to brief the jurisdictional questions, to which plaintiff responded in the margin, "goddamn lie[.] I did!"  <u>Id.</u> exh. 1 at 15.  When the court again relied on plaintiff's failure to file a responsive brief, plaintiff once again replied, "goddamn lie - I did."  <u>Id.</u> exh. 1 at 16.  For a total of five times in that order, plaintiff retorted that the court's conclusion that he failed to file the necessary brief was a "goddamn lie."  <u>Id.</u> exh. 1 at 15-17.

Finally, with respect to plaintiff's contempt toward the court in the instant motion, plaintiff concluded his exhibits with a copy of a letter sent to the court, which provided, in pertinent part, as follows:

> My complaints go ignored and <u>you</u> stupendously said in your order (Doc. #124) that you doubted

---

[2] Plaintiff filed a number of exhibits to his Rule 60(b) motion, but they were all docketed as a single 18-page attachment.  For purposes of the record, the court will address all the exhibits as "Exhibit 1," with the page number corresponding to the numbering system assigned by the court's electronic filing system, rather than referencing the hand-written page numbers that appear on some of the documents.

> the validity of my court access denial claims,
> even deeming such bizarre! Lucky for you I'm
> unable to get close to you to reinforce the truth
> of my claims and these latest events is [sic] yet
> more corroboration.
>      So how about get off your pompous self-
> righteous high chair and order the prison hacks
> to explain themselves and give you the original
> pleading . . . and return my copy herewith back
> to me, and rescind your maliciously contemptuous
> order.

Id. exh. 1 at 18 (emphasis and omissions in original).

In addition to plaintiff's verbal assaults on the court, he repeatedly referred to prison officials as "hacks," "scoundrels," and "rotten prison hack keepers." Id. at 2; id. exh. 1 at 5, 18. He also included threats to "exact accountability" from unnamed individuals for the injustices he feels he has suffered. Id. at 2.

The court notes that all of the preceding violations were contained within a single motion. Moving on to more recent filings, plaintiff included the following insulting comments as part of an exhibit to the reply that he filed regarding his Rule 60 motion:

> This is an example of why so many of us have
> rage, & murderous hatred for you phony rotten
> prison hack shiteaters. You professional morons
> need killing and I wonder, are you willing to die
> to prevent a man from reading a goddamn
> newspaper? You rotten asswipes are evil pigs.
> People who have real honor & integrity don't work
> in prisons. . . . You pigs need/deserve a bullet
> in the back of your head - line up.

(Doc. 129 exh. 1 at 2.) In another filing, denominated a "supplement" to the preceding reply brief, plaintiff continued his spiteful rants against the court:

> Plaintiff further offers Exhibit A to support the
> validity of his court access denial claims that
> Judge Belot contemptuously said: "These things
> have caused the court to doubt the validity of
> the bizarre claims made by petitioner (I'm the

-5-

> damn Plaintiff eh) in his present motions".
> Judge Belot should also remember his oath to
> defend and uphold the Constitution and laws of
> the U.S. (like 18 U.S.C. § 241 and § 242), and
> ask himself how he'd fare under such hideously
> intentional abuses as I suffer under and will
> continue to suffer under until some Judge w/real
> backbone who values his oath and duties,
> intervenes. . . .  My mental health has been
> seriously affected by the illegal abuses I suffer
> under and will continue to suffer under.  And any
> decent reasonable American citizen would crave
> these tyrant's heads on a stick too.  So I say
> how dare you berate or condemn me to live like
> this.  Why does it always take a desperate act to
> get relief?

(Doc. 130 at 1-2 (grammatical errors in original).)

Shortly after he filed those comments, plaintiff presented another motion in which he opened by saying,

> I call your attention to my stagnating pleadings
> filed since you arbitrarily dismissed this case
> on 12-5-05, and <u>erroneously</u> claimed/determined I
> had failed to comply with your 11-30-05 Deadline
> order.
>      Let's recap: . . . .

(Doc. 132 at 1 (emphasis in original).)  He then concluded his prayer for relief with the following declaration:

> [G]oddamn you to burn in hell for giving these
> cretins your blessing to continue [the alleged
> abuses].

<u>Id.</u> at 3.

## II. ANALYSIS

The Tenth Circuit recently summarized and reiterated a court's authority to deal with the sort of flagrant abuses perpetrated by plaintiff in this case:

> Plaintiff's briefs on appeal do little more than
> attempt to impugn (without basis) the integrity
> of the district judge.  Such writings are
> intolerable, and we will not tolerate them.  "Due
> to the very nature of the court as an

-6-

institution, it must and does have an inherent
power to impose order, respect, decorum, silence,
and compliance with lawful mandates.  This power
is organic, without need of a statute or rule for
its definition, and it is necessary to the
exercise of all other powers." <u>United States v.
Shaffer Equip. Co.</u>, 11 F.3d 450, 461 (4th Cir.
1993).  "[I]f the complaint or other pleadings
are abusive or contain offensive language, they
may be stricken <u>sua sponte</u> under the inherent
powers of the court."  <u>Phillips v. Carey</u>, 638
F.2d 207, 208 (10th Cir. 1981) (citing Fed. R.
Civ. P. 12(f) ("[U]pon the court's own initiative
at any time, the court may order stricken from
any pleading any insufficient defense or any
redundant, immaterial, impertinent, or scandalous
matter.")).  In <u>Theriault v. Silber</u>, 579 F.2d 302
(5th Cir. 1978), the court dismissed an appeal
with prejudice because the appellant's notice of
appeal contained "vile and insulting references
to the trial judge."  Although recognizing the
leniency typically given to pro se plaintiffs,
the court stated: "This court simply will not
allow liberal pleading rules and pro se practice
to be a vehicle for abusive documents.  Our pro
se practice is a shield against the technical
requirements of a past age; it is not a sword
with which to insult a trial judge." <u>Id.</u> at 303.

<u>Garrett v. Selby Connor Maddux & Janer</u>, 425 F.3d 836, 841 (10th Cir.

2005).  With that summary of the law, the Court of Appeals went on to

dismiss the case, relying in part on the abusive language contained

in appellant's brief.  <u>Id.</u> at 839-40.

The abusive language upon which the Tenth Circuit relied in

<u>Garrett</u> was mild compared to that used by plaintiff in the present

case.  <u>Id.</u>  Moreover, the offense is exacerbated in this case because

plaintiff was explicitly warned that such abusive language was

prohibited and could lead to sanctions. (Doc. 20 at 4.)  Accordingly,

the court relies upon its "inherent power to impose order, respect,

decorum, silence, and compliance with lawful mandates" to direct that

the plaintiff's Rule 60 motion, and the other profanity-laden and

-7-

otherwise abusive documents cited herein be stricken.  (Docs. 127, 129, 130, 132.)

The net result of this ruling is, of course, that the order dismissing the case remains in effect, and the court will not revisit that matter.  (Doc. 125.)  However, the court finds that such a result, while serious, is appropriate in this case.  This is not the only time that plaintiff has "poisoned the well," so to speak, with his abusive language and/or litigation practices.  In Lynn v. Roberts 2005 WL 3087841 (D. Kan. Nov. 1, 2005), Judge Robinson chronicled plaintiff's use of profane and abusive language against the defendants in that case.  Id. at *5-*6.  Moreover, Judge Robinson placed plaintiff on notice that the use of abusive language could result in having the offending pleadings struck when she ordered certain pleadings stricken in the Roberts case.  Id. at *5.  Yet, just two months after Judge Robinson struck plaintiff's pleadings for such abuses in Lynn v. Roberts, he began filing his barrage of disparaging remarks in this case.

Similarly, plaintiff has been warned that abusive litigation practices and failing to obey court orders can result in dismissal. In Lynn v. Simpson, 2000 WL 745324 (D. Kan. Apr. 10, 2000), after summarizing plaintiff's abuses in that case, Judge Lungstrum explicitly informed plaintiff that "failure to abide by the court's orders could result in sanctions, including dismissal of this action with prejudice."  Id. at *6.

Plaintiff's abusive litigation practices have not been limited to the federal courts.  A review of the electronic case management system for the District of Kansas shows that this is one of 23 cases

-8-

filed in this district in which plaintiff has appeared as a party or otherwise moved to intervene.[3]   Additionally, it appears that plaintiff has pursued a number of cases in the state system, and has likewise engaged in abusive litigation practices in that forum.  See State ex rel. Stovall v. Lynn, 26 Kan. App. 2d 79, 79-80, 975 P.2d 813, 814 (1999).  In fact, a review of the cases catalogued in Stovall suggests that plaintiff sued a number of the same defendants in both the state and federal system.  Compare id. (identifying defendants in plaintiff's state cases) with supra note 3 (listing defendants in plaintiff's federal cases).  In upholding filing restrictions placed on plaintiff by the state district court, the Kansas Court of Appeals found that plaintiff was "using the suits as a means to attempt to harass the victim, witnesses, police investigators, judges, and others involved in his case."  Stovall, 26 Kan. App. 2d at 82, 975 P.2d at 815.  Similarly, in his appeal of the state case that led the court to question its subject matter jurisdiction to hear this case (Doc. 116), the Kansas Court of Appeals noted that "the record is replete with Lynn's unjustified and often outrageous accusations, obscenities, profane language, and implied threats of bodily harm to judicial officers."  Lynn v. Martin, 2003 WL 22990140, *2 (Kan. Ct. App. Dec.

---

[3] Lynn v. Dubowski, No. 96-3577; Lynn v. McClain, No. 00-3132; Lynn v. Nelson, No. 00-3155; Raines v. Antonio, No. 00-3314; Lynn v. Johnston, No. 00-3388; Lynn v. Cleaver, No. 01-3005; Raines v. Stone, No. 01-3312; Edmonds v. Stone, No. 01-3317; Johnson v. Sanders, No. 01-3352; Lynn v. Simmons, No. 01-3422; Lynn v. Harris, No. 01-3436; Lynn v. Mullin, No. 02-3378; Lynn v. Roberts, No. 03-3464; Lynn v. Roberts, No. 04-3021; Lynn v. Anderson-Varella, No. 06-3172; Lynn v. McClain, No. 97-3162; Lynn v. McClain, No. 97-3173; Lynn v. Valdez, No. 97-3209; Lynn v. Dubowski, No. 97-3213; Lynn v. Werth; No. 97-3279; Lynn v. Kunen, No. 97-3294; Lynn v. Barkley, No. 98-3186; Lynn v. Nelson, No. 99-3153.

19, 2003).

In sum, plaintiff has a lengthy litigation history in both the state and federal system.  It appears that he has habitually engaged in the same sorts of abusive conduct that he has exhibited in the present case.  Moreover, he has been repeatedly informed by state and federal judges that his conduct is unacceptable, and that it may lead to filing restrictions, stricken pleadings, and dismissal.  In other words, plaintiff has received plenty of notice that his abusive actions can lead to serious consequences, including dismissal.

Finally, the court finds that the prejudice to plaintiff that will result from having his Rule 60 motion stricken, and therefore leaving this case closed, will be minimal.  A review of his complaint shows that, although he is proceeding under both the First, Eighth, and Fourteenth Amendments, the only real issue that he raises, and the only relief he seeks, is related to prison regulations and policies that prevent him from receiving newspapers and other periodicals. (Doc. 1.)  Those same regulations and policies are being challenged in another case before this court, Prison Legal News v. Werholz, No. 02-4054.  That case is being prosecuted by competent counsel, and any declaratory or injunctive relief awarded to Prison Legal News will enure to the benefit of all Kansas state inmates, including plaintiff. With respect to plaintiff's claims for money damages, the court has already ruled in Prison Legal News that prison officials are entitled to qualified immunity because the law regarding prisoners' rights to publications was not clearly established with respect to the types of regulations and policies at issue here.  Prison Legal News, Inc. v. Simmons, 401 F. Supp. 2d 1181, 1195 (D. Kan. 2005).  The wisdom of

-10-

that decision was recently affirmed by the Supreme Court in <u>Beard v.</u> <u>Banks</u>, __ U.S. __, 126 S.Ct. 2572 (2006), in which similar restrictions on publications were imposed on prisoners in long-term segregation, as is plaintiff.  Accordingly, plaintiff would not be entitled to money damages.  Thus, the only relief that plaintiff might receive is declaratory and injunctive in nature, and he will get that if the competent counsel in <u>Prison Legal News</u> is able to prevail at trial.  The slim possibility that plaintiff might be able to obtain relief even if the plaintiff in <u>Prison Legal News</u> fails is so remote as to be unpersuasive in light of plaintiff's egregious conduct in this case.

As an alternative to basing this ruling on the court's inherent power, as described in <u>Garrett</u>, the court concludes that the offensive motions should be stricken pursuant to Federal Rules of Civil Procedure 11(b)(1) and 41(b).  Rule 11 provides that

> [b]y presenting to the court . . . a pleading, written motion, or other paper, an . . . unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

A violation of this rule is subject to sanctions.  Fed. R. Civ. P. 11(c).  In order to impose sanctions <u>sua sponte</u>, plaintiff must be given notice that sanctions are being considered.  <u>Id.</u> (c)(1)(B).

In this case, plaintiff was advised that Rule 11 sanctions would be considered <u>any time</u> he submitted "correspondence and pleadings containing offensive, abusive, and/or threatening language."  (Doc. 20 at 4.)  Accordingly, the notice requirements of Rule 11 were met.

-11-

Plaintiff was specifically informed that filing papers with abusive language would be considered "intentional harassment," a purpose expressly proscribed by Rule 11(b)(1). Therefore, all the requirements have been met to sanction plaintiff under Rule 11.

Rule 41(b) also authorizes the court to dismiss an action for failure to comply with a court order. Although that rule appears to contemplate that dismissal will be precipitated by a motion from the opposing party, a court may act <u>sua sponte</u> under Rule 41(b). <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 630, 82 S. Ct. 1386, 1388-1389, 8 L. Ed. 2d 734 (1962); <u>Rogers v. Kroger Co.</u>, 669 F.2d 317, 319-20 (5th Cir. 1982); <u>Sec. and Exch. Comm'n v. Power Res. Corp.</u>, 495 F.2d 297, 298 (10th Cir. 1974).

Although the court is merely directing that the offending motion papers be stricken from the record, out of an abundance of caution the court will analyze these ruling as a sanction amounting to dismissal under Rules 11 and 41(b), since the net effect of striking the documents is to end the case once and for all. Although Rule 11 does not expressly discuss dismissal, that is still an appropriate sanction under certain egregious circumstances, such as those presented here. <u>See, e.g.</u>, <u>Jimenez v. Madison Area Technical Coll.</u>, 321 F.3d 652, 657 (7th Cir. 2003). Regardless of the basis of its authority to dismiss a case, the Tenth Circuit has repeatedly recognized that a court has authority to impose the sanction of dismissal for failing to follow procedural rules, <u>Reed v. Bennett</u>, 312 F.3d 1190, 1195 (10th Cir. 2002), and for failing to obey court orders. <u>Gripe v. City of Enid, Okla.</u>, 312 F.3d 1184, 1188 (10th Cir. 2002). As previously discussed, plaintiff's

-12-

conduct violates both Rule 11 and a court order.  (Doc. 20 at 4.)

When considering dismissal as a sanction, the court must evaluate the factors set forth in Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992), regardless of whether the dismissal is pursuant to Rule 11, 37, 41, or some other source of authority.  See LaFleur v. Teen Help, 342 F.3d 1145, 1151 (10th Cir. 2003); M.M. v. Zavaras, 139 F.3d 798, 803-04 (10th Cir. 1998); Mobley v. McCormick, 40 F.3d 337, 340-41 (10th Cir. 1994).  The court must consider

> (1) the degree of actual prejudice to the
> defendant; (2) the amount of interference with
> the judicial process; . . . (3) the culpability
> of the litigant; (4) whether the court warned the
> party in advance that dismissal of the action
> would be a likely sanction for noncompliance; and
> (5) the efficacy of lesser sanctions." Id.
> (internal citations omitted).

Mobley, 40 F.3d at 340 (quoting Ehrenhaus, 965 F.2d at 921).

In its most generic sense, prejudice is defined as "[d]amage or detriment to one's legal rights or claims."  Black's Law Dictionary 1198 (7th ed. 1999).  Under that definition, defendant has suffered no prejudice by being subjected to plaintiff's unsavory writings. This factor does not weigh in favor of dismissal.

By contrast, plaintiff's conduct has substantially interfered with the judicial process.  First, his refusal to abide by the Federal Rules of Civil Procedure and the court's orders has required the court to expend extra time and resources to deal with his repeated violations.  This order is a perfect example, demonstrating the substantial time and expense required to perform the legal research, analysis, and writing to craft this document.  Furthermore, this type of conduct interferes with one of the principal purposes of our court

-13-

systems - to provide a safe, effective forum for resolving disputes that is characterized by civility.  The courts are supposed to be a place where litigants can avoid the sort of violent means of dispute resolution, such as feuds, duels, and brawls, that have plagued man throughout recorded history.  Likewise, parties resorting to the courts should not be required to endure the sort of verbal abuse that often renders ineffective and degrading even non-violent attempts to resolve matters out-of-court.  Here, the court, court personnel, defendant, and defense counsel have had to suffer defendant's foul language, ranting, threats, and the like, all of which undermines the judicial process by rendering it little more than an unprincipled, profanity-laden argument.  This factor weighs heavily in favor of dismissal.

Of all the factors, the third factor weighs most heavily in favor of dismissal: culpability of the litigant.  The facts supporting this conclusion have already been chronicled in detail, supra.  The vileness of plaintiff's comments speak for themselves.  Plaintiff was specifically warned in this case that further misconduct of this sort could lead to sanctions.  (Doc. 20 at 4.)  Furthermore, his extensive litigation history in the state and federal system provides plenty of examples where plaintiff has been warned of the various, potentially harsh, consequences that his abusive language might trigger, including the possibility of dismissal.  Yet plaintiff maliciously and willfully hurled insults, threats, and profanities at the court and prison officials, all in direct and complete defiance of a written order and clearly established procedural rules.  There can be no higher measure of culpability than that achieved by plaintiff on these matters.  This

-14-

factor virtually compels dismissal.

As for the fourth factor, plaintiff was warned in this case, and in numerous other cases, that sanctions were appropriate for threats and abusive language, including the possibility of dismissal. (Doc. 20 at 4;) see also Lynn v. Roberts, 2005 WL 3087841, at *5-*6; Lynn v. Simpson, 2000 WL 745324, at *6.

Finally, as for the fifth factor, the efficacy of lesser sanctions, the court concludes that nothing less would be meaningful to this plaintiff. Indeed, Judge Robinson struck some of his motions in Lynn v. Roberts, and within two-months plaintiff was once again hurling threats and insults in this case. The state courts imposed filing restrictions on plaintiff for his misconduct, but that also failed to discourage his similar offenses in the instant action. See Stovall, 26 Kan. App. 2d at 79-80, 975 P.2d at 814. Similarly, there is no indication that monetary sanctions would be meaningful to plaintiff. He has indicated that he has no money, that he has fines pending that would consume any money that he did have, (Docs. 2; 122 at 2; 127 exh. 1 at 3), and, in any event, the court cannot force him to pay such a sanction before continuing the litigation. See Tripati v. Beaman, 878 F.2d 351, 352 (10th Cir. 1989); Cotner v. Hopkins, 795 F.2d 900, 903 (10th Cir. 1986); Carter v. United States, 733 F.2d 735, 737 (10th Cir. 1984). In other words, for all practical purposes plaintiff could ignore the monetary sanction and continue his abusive practices. Therefore, the court finds that lesser sanctions would be ineffective at curbing the abusive practices of this recalcitrant litigant.

In sum, all but the first of the Ehrenhaus factors weigh heavily

-15-

in favor of dismissal as the appropriate sanction for plaintiff's egregious conduct in this case.   The court therefore orders that docket entries 127, 129, 130, and 132 be stricken from the record. This ruling is based on the court's inherent power, <u>Garrett</u>, 425 F.3d at 841, or, alternatively, on the court's authority under Federal Rules of Civil Procedure 11 and 41(b).   The court reaffirms its dismissal of this case.

A motion for reconsideration of this order under Local Rule 7.3 is not encouraged.   The standards governing motions to reconsider are well established.   A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992).   Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>.   The response to any motion for reconsideration shall not exceed three pages.   No reply shall be filed.

IT IS SO ORDERED.

Dated this   4th   day of October 2006, at Wichita, Kansas.

s/  Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-16-